IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02209-KLM

THERESA CARRILLO,

     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

     Defendant.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court[1] on the **Social Security Administrative Record** [Docket No. 15; Filed November 13, 2013], filed in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant, the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits.  On February 25, 2013, Plaintiff filed an Opening Brief [#24] (the "Brief").  On April 12, 2013, Defendant filed a Response [#25].  No Reply Brief was filed. The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

## I.  Background

     Plaintiff filed this action on August 20, 2013, pursuant to 42 U.S.C. §§ 405(g) and

_____

[1]  The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See Order* [#29].

1383(c)(3), for judicial review of an unfavorable decision by the Commissioner with respect to Plaintiff's claim for supplemental security income under Title XVI of the Social Security Act (the "Act").

Plaintiff was born in 1960 and was forty-nine years old on the date of the alleged onset of disability.  Tr. 182.[2]  Plaintiff has an eleventh grade education and most recently worked as a retail cashier and assistant manager for Goodwill Industries.  Tr. 41.

## A.    Medical History

On August 8, 2009, Plaintiff was admitted to the hospital with symptoms of left arm and hand weakness.  Tr. 230.  Doctors ordered various tests.  *See, e.g.*, Tr. 244, 246. They determined that Plaintiff had degeneration in her cervical spine, that she had suffered a "[p]robably small vessel ischemic stroke affecting the left arm," and that she had diabetes. Tr. 230.  On August 11, 2009, Plaintiff was released from the hospital.  Tr. 230.  The Discharge Summary Report noted that there was "no gross focal weakness at the time of discharge" with respect to her left arm and hand.  Tr. 231.

On August 18, 2009, Plaintiff went to her community health center for a follow-up appointment regarding her medications.  Tr. 255.  She disclosed that she had type 2 diabetes, dyslipidemia, and history of stroke.  Tr. 255.  The visit primarily focused on the medication for her diabetes, but the physician also addressed Plaintiff's concern of finding a less expensive medication to reduce her risk of future stroke.  Tr. 255.

On June 25, 2010, Plaintiff returned to her community health center for another

---

[2]  The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 15, 15-1, 15-2, 15-3, 15-4, 15-5, 15-6, 15-7, and 15-8, by the sequential transcript numbers instead of the separate docket numbers.

follow-up appointment regarding her medications.  Tr. 267.  She disclosed that she had

dyslipidemia and right leg pain at night.  Tr. 267.  She was prescribed medication and told

to do gentle stretching exercises for her leg pain.  Tr. 267.  On August 4, 2010, Plaintiff

returned to the hospital and reported low back and right leg pain.  Tr. 279.  Testing

revealed that she had "[m]ild degenerative spondylosis" in her lumbar spine.  Tr. 279.

On August 21, 2010, Plaintiff was seen by Angelo Dilullo, M.D. ("Dr. Dilullo") for a

consultative examination regarding Plaintiff's request for disability.  Tr. 257-61.  Dr. Dilullo

found that Plaintiff had:

> [c]erebral vascular disease with likely small vessel stroke with residual mild
> weakness and parasthesias in the left arm.  Coordination is grossly intact,
> although it is certainly plausible that she has a tendency to drop boxes and
> other objects with her abnormal strength and sensation in this extremity.

Tr. 260.  He also found that she had radiculopathy[3] in her right leg, likely as a result of

nerve impingement in her lumbar spine.  Tr. 260.  He assessed that she could lift and carry

up to twenty pounds occasionally and ten pounds frequently, as "evidenced by the

weakness and numbness in the left arm which could lead to her dropping objects."  Tr. 261.

He also assessed that her left extremity could reach, handle, feel, and finger without

limitation, except that he recommended that "she only do this with a small, light object if she

---

[3] Radiculopathy is a "[d]isorder of the spinal nerve roots."  *Madron v. Astrue*, 311 F. App'x 170, 172 n.3 (10th Cir. 2009) (quoting *Stedman's Medical Dictionary* at 1503 (27th ed. 2000); citing *The Merck Manual*, § 14 at 1488 ("Nerve root dysfunction, which is usually secondary to chronic pressure or invasion of [a spinal nerve] root, causes a characteristic radicular syndrome of pain and segmental neurologic deficit.")).  Radiculopathy is also known as a "pinched nerve."  *Grogan v. Barnhart*, 399 F. App'x 1257, 1262 n.2 (10th Cir. 2005) (citing Cervical Radiculopathy (Pinched Nerve in Neck), at http:// www.emedx.com/emedx/diagnosis_information/shoulder_disorders/cerv-ical_ radiculopathy_outline.htm; Radiculopathy, at http:// www.back.com/symptoms-radiculopathy. html ("Doctors use the term radiculopathy to specifically describe pain, and other symptoms like numbness, tingling, and weakness in your arms or legs that are caused by a problem with your nerve roots.")).

is going to do it on an ongoing basis as part of her job." Tr. 261.  He also noted that "[p]ushing and pulling may be difficult for her, and handling objects on an ongoing basis with her left hand may be a challenge." Tr. 261.

On September 29, 2010, Plaintiff returned to her community health center with complaints of sciatic pain running down her middle and upper right thigh, making it painful to sit. Tr. 271.  On October 20, 2010, Plaintiff took a depression screen, after which it was recommended that she seek mental health treatment. Tr. 273.  On January 1, 2011, Plaintiff complained of knee pain, "a couple of kind of fleeting pains in her wrists at times," and other previously diagnosed ailments. Tr. 276.  Plaintiff underwent neck surgery in October 2011, seeking to relieve compression of outgoing nerve roots at the C5-6 level that caused radiculopathy in her arms. Tr. 327.

B.    Application to the Social Security Administration

On June 9, 2010, Plaintiff filed for supplemental security income, claiming an inability to work since August 7, 2009, due to diabetes and a stroke that affected her left arm and right hip. Tr. 137, 182, 186.

In a disability report that Plaintiff completed around the time of her application, Plaintiff reported that she was five feet, one inch tall and weighed 155 pounds. Tr. 186. She alleged constant pain in her right hip, painful sciatic nerve issues, diabetes, continued weakness in her left arm, memory loss, and spinal arthritis. Tr. 205.  With respect to her daily activities, she asserted that the sciatica made it difficult for her to stand or sit for more than a few minutes at a time, and that combined with the weakness in her left arm, it was "nearly impossible" for her to perform routine household tasks and that she had difficulty brushing her hair and her teeth. Tr. 209.  Her medications at the time were Ibuprofin 600

-4-

for her pain, Lisinopril for her kidneys, Metformin for her diabetes, Niaspan to lower her cholesterol, Simvastatin to thin her blood, and Tizanadine to relax her muscles.  Tr. 208. Plaintiff reported no side effects from these medications.  Tr. 208.

The Commissioner denied Plaintiff's application at the initial and reconsideration levels.  Tr. 72-81, 84-90.  Plaintiff requested a hearing before an administrative law judge (the "ALJ") of the Social Security Administration.  Tr. 91-93.  The ALJ granted Plaintiff's request and conducted a hearing on April 19, 2011.  Tr. 101-124.

**C.    The ALJ Hearing**

Plaintiff and Bruce Magnuson, an impartial vocational expert (the "VE"), testified at the hearing.  Tr. 37.  The ALJ first questioned Plaintiff.  Tr. 41-57.  Plaintiff testified that she has an eleventh grade education and did not receive any vocational training after leaving school.  Tr. 42.  On August 7, 2009, she suffered a stroke, but she returned to work from September 24, 2009 through December 21, 2009, when she was terminated from Goodwill Industries because she could not perform the work she was doing before her stroke.  Tr. 42-43.  She last received income from unemployment on March 27, 2011.  Tr. 44.

Regarding Plaintiff's physical capabilities, the ALJ acknowledged Plaintiff's complaints regarding diabetes, her left arm, her right hip, and her back.  Tr. 44.  She was regularly seeing a medical doctor and started seeing a psychiatrist or psychologist approximately two months prior to the hearing.  Tr. 50-51.  She reported having no side effects from her present medications.  Tr. 52.  Since her stroke, Plaintiff had been experiencing numbness and pain from her fingers all the way up her left arm.  Tr. 61.  She also testified that she was much more forgetful and had some comprehension difficulty since her stroke.  Tr. 61.  Her back pain had been constant for at least the previous six

months.  Tr. 61-62.  Plaintiff testified that on an average day the longest she could sit at one time was about one hour, or two with breaks; that the longest she could stand at one time was about thirty minutes, or four hours with breaks; that she could walk about five blocks, with two 5-10 minute breaks; that she could lift about ten pounds; and that she would be able to pick up a piece of paper sitting on a table in front of her.  Tr. 45, 59, 60. She also testified that she is right handed.  Tr. 45.

Regarding her daily life, Plaintiff was surviving on food stamps, Medicaid, and help from her four adult children, who ranged in age from 27 to 34.  Tr. 45-46.  Plaintiff had one minor child living at home, who was 11 years old.  Tr. 46.  Plaintiff testified that when her grandchildren visited her each week at her apartment, they would walk or go to the park or play, but that she could not lift them.  Tr. 47.  Plaintiff helped her minor child with his schoolwork, went to see his school art and music programs, went to the movies with him (although she had trouble sitting through an entire movie), and went out to eat with him. Tr. 59.  Plaintiff also watched television, read, used the bus, listened to music, used the computer, and tried to use her bicycle, although she had been unable to ride since the previous summer due to pain in her back.  Tr. 47-49, 62-63.  She also performed physical therapy at home, including light lifting and stretches.  Tr. 49.  She did not smoke, consume alcohol, or use drugs, including marijuana.  Tr. 49.  She could do laundry in small amounts, grocery shop, clean her apartment, make food, feed herself, and wash dishes.  Tr. 55-56, 58.  Although she could wash dishes, she would often drop items from her left hand because she did not have the strength to hold heavier items, like pots and pans.  Tr. 57.

Regarding her work history, Plaintiff performed home healthcare in 1997.  Tr. 53. In 1998, she did several jobs for Caldwell Country Club, Goodwill Industries, Caldwell

Diversified Industries, and Frontier Manufacturing.  Tr. 53-54.  In 1999, Plaintiff worked for Goodwill Industries first as a retail cashier and then as an assistant manager at one of their retail stores.  Tr. 54.  Between 1999 and 2008 she did not work because she was then married and taking care of her children.  Tr. 53.  In 2008 and 2009, she again worked as a cashier and an assistant manager for Goodwill Industries.  Tr. 54.

The ALJ next questioned the VE.  Tr. 64-70.  Having reviewed the record and heard Plaintiff's testimony, the VE categorized Plaintiff's prior work as: 1) short-order cook, light exertional level; 2) sales clerk, light exertional level; 3) home attendant, medium exertional level; 4) cleaner/housekeeping, light exertional level; and 5) management, light exertional level.  Tr. 64-65.  The VE opined that Plaintiff had some transferable skills from her past work as a home attendant.  Tr. 67-68.

The ALJ then asked the VE about the vocational opportunities for a hypothetical person with the same age, education, and past work experience as Plaintiff, who could lift or carry up to ten pounds frequently and twenty pounds occasionally; could stand or walk with normal breaks for a total of six hours in an eight-hour work day; could sit with normal breaks for the same period; could push or pull with the aforementioned weight restrictions; could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching on the right dominant arm, but limiting the left non-dominant arm to only frequently performing such activities; could frequently perform some postural activities such as climbing, stooping, crouching, kneeling, and crawling; and could occasionally climb ladders, ropes, or scaffolds.  Tr. 65.  The VE responded that a person with these abilities and limitations could perform the work of, for example, a short-order cook, sales clerk, manager, sales attendant, "cashier II," and small products assembler.

-7-

Tr. 65-66.

The ALJ then posed a second hypothetical question about a person with the same age, education, and past work experience as Plaintiff, who could lift or carry up to ten pounds frequently and twenty pounds occasionally; could sit without restriction; could stand or walk with normal breaks for a total of four hours in an eight-hour work day; could push or pull with the aforementioned weight restrictions; could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching on the right dominant arm, but limiting the left non-dominant arm to only repetitively handle small light objects; should avoid unprotected heights and machinery; could occasionally perform some postural activities such as climbing, balancing, stooping, crouching, kneeling, and crawling; could occasionally climb stairs; and should avoid ladders, ropes, or scaffolds. Tr. 66-67. The VE responded that a person with these abilities and limitations could not perform any of Plaintiff's past work, but that she could perform light, seated work consisting of, for example, a companion, a storage facility rental clerk, or a parking lot attendant. Tr. 67.

The ALJ then posed a third hypothetical scenario, wherein the individual had the same education and past work experience as Plaintiff, but that due to a combination of impairments, she could not sustain concentration, persistence, or pace necessary to consistently fulfill work for eight hours a day, five days a week. Tr. 68. The VE opined that such an individual could not work. Tr. 68.

Plaintiff's representative next questioned the VE with a new hypothetical, using the same individual as before but who was limited to lifting and carrying ten pounds occasionally; could sit for thirty minutes at a time up to four hours in an eight-hour work

day; could stand and walk only in 10-15 minute increments for no more than four hours in an eight-hour work day; could only reach, handle, finger, and feel occasionally with the left arm objects weighing under five pounds; should avoid dangerous moving machinery and heights and climbing stairs; could occasionally perform other postural activities such as balancing, stooping, kneeling, and crawling; and could only do simple, repetitive mental tasks that did not require a fast pace or production in a set amount of time.  Tr. 68-69.  The VE responded that such an individual could not do any work.  Tr. 70.

## D.   The Commissioner's Decision

On June 30, 2011, the ALJ issued an unfavorable decision.[4]  Tr. 24-31.  The ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period and that she had two severe impairments: degenerative disc disease of the lumbar spine and residuals from a cerebrovascular accident.  Tr. 26.  The ALJ specifically noted that two impairments were not severe.   Tr. 26.   First, although Plaintiff was diagnosed with situational depression in October 2010, the evidence did not demonstrate ongoing care for the condition and thus the condition failed to meet the durational requirement that an impairment impose more than minimal functional limitations for a period of twelve continuous months.  Tr. 26.  Second, although Plaintiff was diagnosed with diabetes in August 2009, the impairment was well-controlled by non-insulin medications, and there were no documented signs of neuropathy, retinopathy, or other functional limitations attributable to diabetes.  Tr. 26.

The ALJ next found that Plaintiff's severe impairments, individually or in combination,

---

[4]  For an explanation of the five-step process used by the ALJ, see Section II.A. below.

did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1 (the "Listings").  He found that the lumbar spine impairment did not meet Listing § 1.00 for orthopedic impairment, and he found that the cerebrovascular accident did not meet Listing § 11.04 for sensory or motor aphasia.  Tr. 26-27.

Regarding Plaintiff's residual functional capacity ("RFC") to perform work-related activities, the ALJ considered the entire record and found that Plaintiff was capable of light work with the following limitations: sitting for six hours or less in an eight hour work day; standing/walking for four hours or less in an eight-hour work day; lifting/carrying no more than ten pounds frequently and twenty pounds occasionally; pushing/pulling with the aforementioned weight restrictions; performing activities requiring manual dexterity for both gross and fine manipulation with handling and reaching by the right arm, but only repetitively handling light objects with the left arm; never climbing ladders, ropes, or scaffolds; avoiding work at heights and moving machinery; and occasionally balancing, stooping, crouching, kneeling, crawling, or climbing ramps and stairs.  Tr. 28.

Finally, relying on the VE's testimony, the ALJ found that Plaintiff could not perform any of her past relevant work.  Tr. 29.  However, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as a companion, with 1,760 jobs in Colorado and 102,488 job nationally; a storage facility clerk, with 2,284 jobs in Colorado and 80,529 nationally; and a parking lot attendant, with 607 jobs in Colorado, and 36,197 nationally.  Tr. 29-30.  Thus, the ALJ found that Plaintiff was not under a disability during the relevant period.  Tr. 31.

Plaintiff appealed the ALJ's decision.  Tr. 17-19.  The Appeals Council took into

evidence additional medical records from after the ALJ's hearing, which dated between August 2011 and February 2012. Tr. 4. However, the Appeals Council still denied Plaintiff's request for review, thereby transforming the ALJ's decision into the final decision of the Commissioner. Tr. 1. Plaintiff then timely sought judicial review of the decision by the Court. *See Compl.* [#1].

## II. Standard of Review and Applicable Law

Pursuant to the Social Security Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. § 423(d)(3), (d)(5)(A).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may

neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, __ F. App'x __, __, 2013 WL 3285617, at *1 (10th Cir. July 1, 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. United States Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ then considers, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next,

-12-

at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings."  *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142).  "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work."  *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142).  "Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy."  *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled.  *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  However, the ALJ need not specifically "reference everything in the administrative record."  *Wilson*, 602 F.3d at 1148.  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1140 (internal quotation marks omitted).  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Further, evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**III.  Analysis**

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits, contending that the ALJ's decision is not based on substantial evidence and that the ALJ did not follow proper legal procedures.  Specifically, Plaintiff argues that the ALJ erred: (1) by failing to consider Plaintiff's left-arm radiculopathy to be a severe impairment at step two; (2) by failing to consider whether Plaintiff's left-arm radiculopathy met Listing § 1.04A at step three; and (3) by failing to properly evaluate Plaintiff's credibility regarding pain. *Brief* [#24] at 5.

A.     **Step Two: The ALJ's Assessment of the Severity of Plaintiff's Radiculopathy**

Plaintiff argues that the ALJ should have found her radiculopathy to be a severe impairment at step two of her assessment.  *Brief* [#24] at 12-13.  Specifically, the radiculopathy of which Plaintiff here complains is degenerative disc disease in her cervical spine and its effects on her left arm.  *Id.* at 12.

Even assuming *arguendo* that the ALJ erred by incorrectly determining the severity of Plaintiff's impairments at step two, the Tenth Circuit has made it clear that such error "became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).  *See also Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  But this does not mean the omitted impairment simply disappears from his analysis.  In determining the claimant's RFC, the ALJ is required to consider the effect of all of the claimant's medically determinable impairments, both those he deems 'severe' and

those 'not severe.'") (emphasis and citations omitted).

Here, Plaintiff points to evidence indicating that an MRI of Plaintiff's cervical spine performed at the time of her stroke on August 10, 2009, showed bulging discs at C5-6 and C6-7. Tr. 246. The impairments that Plaintiff asserts were caused by these discs are numbness and pain in her left arm, an inability to lift more than ten pounds, and occasionally dropping things. The ALJ addressed all of these in her step-four analysis. *See* Tr. 27 (noting, for example, Plaintiff's "left arm problems," "continued weakness in her left arm," and "left arm weakness made performing household chores almost impossible"), 28 (noting, for example, "her left arm hurt constantly" and "normal sensory findings" other than in her legs), 29 (noting, for example, "slightly reduced strength in the left" arm, "full sensation and full range of motion of all extremities," and "mild loss of strength in her left" arm). The ALJ also noted that she gave "great weight" to Dr. Dilullo's opinion that Plaintiff retained "the physical functional capacity to sustain a range of light and exertional work, with appropriate manipulative and postural limitations," as reflected in the RFC. Tr. 29. The RFC stated that Plaintiff could lift, carry, push, and pull up to ten pounds frequently and twenty pounds occasionally but could only repetitively handle light objects with her left arm.[5]

---

[5] Subsequent to the ALJ's decision on June 30, 2011, and thus not considered by the ALJ, Plaintiff underwent neck surgery in October 2011. Tr. 327. The surgery sought to relieve compression of outgoing nerve roots at the C5-6 level that caused radiculopathy in her arms. Tr. 327. Plaintiff submitted medical records relating to the surgery and her follow-up visits dated from August 2011 through February 2012 to the Appeals Counsel in support of her appeal. Tr. 5. The Appeals Counsel accepted the additional evidence, made it a part of the record, and considered it in making the decision to deny Plaintiff's appeal. Tr. 1, 5. Because the Appeals Counsel considered this new evidence, remand is not required for the Commissioner's consideration and the Court may examine it in conjunction with its review of the ALJ's decision. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). However, review of this evidence does not impact the Court's analysis of the Commissioner's decision at step two or at steps three or four below.

Tr. 27.

Thus, the Court finds that any potential error on the part of the ALJ at step two of her analysis was harmless because (1) she did not conclusively determine at step two that Plaintiff should be denied benefits, and (2) she considered at step four the effect of all of the claimant's medically determinable impairments, both those deemed "severe" and those "not severe."  *See Carpenter*, 537 F.3d at 1266; *Hill*, 289 F. App'x at 292.

**B.     Step Three: Whether Plaintiff's Radiculopathy Met Listing § 1.04A**

Plaintiff argues that the ALJ should have found that her radiculopathy met Listing § 1.04A.  This Listing consists of:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App.1.

At step three, the ALJ is only required to determine "whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled . . . ."  *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). Assuming *arguendo* that the ALJ erred at step three by failing to discuss Plaintiff's radiculopathy in connection with the Listings, the Court must consider whether "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review."  *Murdock v. Astrue*, 458 F. App'x 702, 704 (10th Cir. 2012

(quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005)).  If the ALJ's findings "conclusively preclude" the claimant's qualification to meet the requirements of a Listing, such that "no reasonable factfinder could conclude otherwise," then the error at step three, if any, is harmless.  *Murdock*, 458 F. App'x at 704 (quoting *Fischer-Ross*, 431 F.3d at 734).

The ALJ's RFC findings at step four clearly and conclusively reject the possibility of a finding that Plaintiff is presumptively disabled under Listing § 1.04A.  Specifically, considering the entire record, the ALJ found that, despite her impairments, Plaintiff retained the ability to sit for six hours or less in an eight hour work day; stand and walk for four hours or less in an eight-hour work day; lift and carry no more than ten pounds frequently and twenty pounds occasionally; push or pull with the aforementioned weight restrictions; perform activities requiring manual dexterity for both gross and fine manipulation with handling and reaching by the right arm, but only repetitively handle light objects with the left arm; never climb ladders, ropes, or scaffolds; avoid work at heights and moving machinery; and occasionally balance, stoop, crouch, kneel, crawl, or climb ramps and stairs.  Tr. 28.  Thus, the ALJ's findings regarding Plaintiff's functionality allow Plaintiff to perform a range of gainful activities.  *See Fischer-Ross*, 431 F.3d at 734.

These findings are not consistent with a finding that the severity of Plaintiff's radiculopathy is "enough to prevent a person from doing any gainful activity."  20 C.F.R. § 416.925(a).  Thus, the Court finds that the ALJ's findings at steps four and five conclusively preclude Plaintiff from qualifying under Listing § 1.04A, and that no reasonable factfinder could find conclude otherwise.  Therefore, even if the ALJ erred by not discussing Plaintiff's radiculopathy based on issues with her cervical spine, the Court finds that any such error is harmless.

C.      **Step Four: The ALJ's Assessment of Plaintiff's Credibility**

Plaintiff states that the ALJ failed to conduct a proper credibility analysis because she did not properly account for the objective medical evidence in the record supporting Plaintiff's assertions of pain and because she relied too heavily on Plaintiff's daily activities. Plaintiff argues that these asserted errors resulted in an incorrect determination of Plaintiff's RFC at step four of the sequential evaluation process. The Court therefore addresses whether there was substantial evidence supporting the ALJ's decision to discount Plaintiff's assertions of pain.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). "However, 'findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Hackett*, 395 F.3d at 1173 (quoting *Kepler*, 68 F.3d at 391 (brackets omitted)). The ALJ need not make a "formalistic factor-by-factor recitation of the evidence," but she must set "forth the specific evidence [s]he relies on in evaluating the claimaint's credibility." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Finally, the ALJ need only fully credit a claimant's testimony regarding assertions of pain without supporting medical evidence if the ALJ finds the claimant's testimony credible based on the entire record. *See generally* 20 C.F.R. § 416.929; *see also Kepler*, 68 F.3d at 391 (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (stating that the ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir. 1988) (stating that "failure to make credibility findings

regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support [her] conclusion that claimant is not under a disability")).

At the hearing, Plaintiff testified that she experienced pain in her left arm and lower back. Tr. 61. Regarding her back pain, she asserted that she had it "all the time." Tr. 61. Regarding disabling pain, the Tenth Circuit Court of Appeals requires an ALJ to determine: (1) whether objective medical evidence establishes a pain-producing impairment; (2) whether the impairment can reasonably be expected to produce the kind and severity of pain alleged; and (3) whether this pain is truly disabling. *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987). When determining whether a claimant's subjective complaints of pain are credible, the ALJ should consider:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991)). In this case, the ALJ ultimately concluded that:

> [A]fter careful consideration of the evidence as a whole, including the claimant's reports of an ability to engage in a wide variety of activities of daily living, the lack of objective medical support, her failure to pursue mental health care, and the other inconsistencies discussed above, the undersigned finds that, while the claimant's medically determinable impairments could reasonably be expected to cause some level of pain and other symptoms, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the other evidence of record.

Tr. 29.

### 1.     Objective Medical Evidence

"Objective evidence 'is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of' an individual's symptoms and the effects those symptoms may have on the individual's ability to function." SSR 96-7p, 1996 WL 374186, at *6 (quoting 20 C.F.R. § 416.929(c)(2)). "When present, these [medical] findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects." SSR 96-7p, 1996 WL 374186, at *6.  Further, "[t]he absence of an objective medical basis which supports the degree of severity of subjective complaints is just one factor to be considered in evaluating the credibility of the testimony and complaints." *Luna*, 834 F.2d at 165 (internal citations omitted).

The ALJ explained her findings regarding Plaintiff's credibility in great detail. Tr. 28-29.   Plaintiff directs the Court's attention only to three specific instances in the ALJ's thorough evaluation of Plaintiff's medical record which Plaintiff asserts were improperly ignored or minimized. *Brief* [#15-2] at 20. First, the ALJ noted that Dr. Dilullo found that Plaintiff had only "mild sensory loss" in her legs. Tr. 28. Second, the ALJ noted that while Dr. Dilullo found that Plaintiff tested positive for straight leg raising on the right side (which is consistent for a diagnosis of right lower extremity radiculopathy), Dr. Dilullo also found that she walked with a "mild" limp. Tr. 29. Third, the ALJ noted that Dr. Dilullo found that Plaintiff had only "slightly reduced strength" in her left arm. Tr. 29.

Plaintiff's argument misses the point of the ALJ's discussion.  While Plaintiff argues that these medical findings support Plaintiff's assertions of impairment and inability to work, the ALJ instead used these findings to discount Plaintiff's credibility regarding the severity of her condition, not to make a finding that her impairments, such as they were, could not

-20-

be used to support any ultimate determination of Plaintiff's disability.  The evidence cited by the ALJ, especially when made in connection with Plaintiff's daily activities, as outlined below, undermines Plaintiff's claim that she experiences disabling pain.  *See Wilson*, 602 F.3d at 1146.

## 2.    Daily Activities

Evidence that a claimant engages in limited daily activities does not establish that the claimant has an ability to work.  *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988); *Hamlin v. Barnhart*, 265 F.3d 1208, 1220-21 (10th Cir. 2004).  However, this type of evidence may be considered along with other evidence in determining whether the claimant is entitled to disability benefits.  *Gossett*, 862 F.2d at 807.

The ALJ found that Plaintiff's allegation that her combination of impairments prevented all work activity was inconsistent with her testimony, which "described a fairly active lifestyle."  Tr. 28.  After listing the activities mentioned by Plaintiff at the hearing, *see supra* § I.C., the ALJ concluded that, "While these activities do not necessarily reflect on the claimant's ability to sustain work-related activities throughout a regular work schedule, they are inconsistent with her allegations of such extensive disability, and reflect poorly on her overall credibility."  Tr. 28.  The ALJ also noted that:

> Furthermore, the claimant testified that she received unemployment benefits until March 2011, when she was no longer eligible for extension of such payments.  The undersigned finds it inconsistent that the claimant would present herself as completely disabled from all work to a Federal agency in order to qualify for disability payments, while at the same time actively pursuing work through a State agency, presenting herself as able and willing to work.  The undersigned does not find the claimant's testimony that she sought only part-time work to be persuasive, and the undersigned further notes that she testified that she is still looking for some kind of clerical work, an indication that she believes herself capable of working.

Tr. 28.

The Court finds that the ALJ appropriately utilized Plaintiff's daily activities in the evaluation of her alleged disability because the ALJ also relied on other evidence in making her overall credibility determination, such as the objective medical evidence discussed above and Plaintiff's receipt of unemployment benefits. *See Patterson v. Apfel*, 62 F. Supp. 2d 1212, 1218 (D. Kan. 1999) (holding that an ALJ must consider and weigh multiple factors in combination when evaluating a claimant's credibility). Because the ALJ's credibility determination is supported by substantial evidence, it must be upheld. *Casis v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1999) (holding that the Court must defer to the ALJ as the trier of fact, in that she is most optimally positioned to observe and assess witness credibility).

Based on the foregoing, the Court therefore finds that the ALJ sufficiently linked her evaluation of Plaintiff's credibility to substantial evidence in the record and that the ALJ satisfied the analysis required by *Luna v. Bowen*. The ALJ offered several reasons for her conclusion and identified parts of the record evidence that indicate that Plaintiff's pain was not as severe as she asserted. The law in this Circuit "does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence [s]he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls*, 206 F.3d at 1372. The Court finds that the ALJ has properly done so here.

## IV.  Conclusion

The record contains substantial evidence from which the ALJ concluded that Plaintiff was not disabled within the meaning of the Act during the time relevant to this case. The

ALJ's decision was based upon substantial evidence and is free of reversible legal error.

Accordingly,

IT IS HEREBY **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's

fees.


Dated:  July 11, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge